IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NINA SLOAN, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.  RDB-04-3563 |
| THE JOHNS HOPKINS HOSPITAL | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This employment discrimination action arises out of a Complaint filed by Plaintiff Nina Sloan ("Plaintiff") against her former employer, Defendant Johns Hopkins Hospital ("JHH" or "Defendant").  The Complaint alleges that Defendant discriminated against Plaintiff on the basis of her race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et. seq.*  Pending before this Court is Defendant's Motion for Summary Judgment.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331.  The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2004).  For the reasons stated below, Defendant's Motion for Summary Judgment is GRANTED.

BACKGROUND

Plaintiff, who is African-American, began working at JHH as a Respiratory Care Practitioner ("RCP") level I in January of 1999.  At the time Plaintiff was hired, the RCP I salary range was $13.33 to $19.33 per hour.  Based on her application and qualifications, Plaintiff was hired at the hourly rate of $17.13 per hour.

At all times she was employed by JHH, Plaintiff possessed an RCP license issued by the

state of Maryland. Pursuant to the license and the scope of her job, Plaintiff was not allowed to prescribe medications to patients or administer respiratory care medication without a doctor's order. Plaintiff's main duties included maintaining and operating inhalation equipment and administering respiratory care medications. She was also required to document, in patients' medical charts, the care that was provided to them during the course of her shift. The failure to comply with these policies results in disciplinary action.

Pursuant to Defendant's disciplinary procedures, Plaintiff was counseled by Gary Oldenburg, Manager of Respiratory Care, on August 16, 2000, after she allegedly administered medication to a patient without a doctor's order. Plaintiff received a written warning on October 25, 2000, the next stage of the disciplinary process, after she failed to properly document patient care. After discussing the matter with Mr. Oldenburg, the written warning was rescinded, but he advised her to follow protocol for documenting patient care in the future. On April 12, 2001, Plaintiff received another written warning for failure to document patient care.

On April 18, 2001, Plaintiff applied for a promotion to the position of RCP II. She was not approved for the promotion because her employment file contained a record of "Active disciplinary action beyond counseling." (Snow Aff. Ex. 3.)

In January of 2002, Plaintiff received a one-day suspension and was warned that any further failure to document patient care would result in termination of her employment. After receiving the suspension, Plaintiff filed an internal grievance alleging discrimination based in part on her race, culminating in mediation on August 26, 2002, with Anthony Bilenki, Technical Director of Respiratory Care Services, and Clifton Scott, Director of Employee/Labor Relations, Diversity & EEO/AA. These efforts resulted in a Mediation Agreement. (*See* Def.'s Mem.

2

Supp. Summ. J. Ex. 4.)

On September 22, 2002, Plaintiff administered medication to an infant without a physician order. The baby's condition worsened and when the attending physician arrived to care for the patient, Plaintiff failed to inform the doctor that she had already administered the drug. A registered nurse did, however, and an incident report was filed. In the subsequent investigation, Plaintiff admitted to administering medication without a doctor's order. As a result of this incident, Plaintiff was informed that if she did not resign she would be fired. Plaintiff resigned on September 24, 2002. Notice of the incident was also provided to Maryland's Physician Quality Assurance Board and Plaintiff's license was suspended.

On March 12, 2003, Plaintiff filed a charge of discrimination with the Baltimore Community Relations Commission ("BCRC"). The BCRC determined that there was no probable cause to support a finding of discrimination and Plaintiff received a right to sue letter on August 9, 2004.[1] Plaintiff brought this action on November 5, 2004, alleging that Defendant violated Title VII by discriminating against her on the basis of her race, color, and sex.[2] On September 15, 2005, this Court granted Defendant's Motion to Dismiss Plaintiff's claims of color and sex discrimination for failure to exhaust administrative remedies. Discovery proceeded

---

[1] Plaintiff did not attach her right to sue letter to her Complaint.

[2] Under Title VII, it is unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

solely on the issue of whether Defendant discriminated against Plaintiff on the basis of her race. Pending before this Court is Defendant's Motion for Summary Judgment (Paper No. 23).

## STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  477 U.S. 242, 249 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold*, Inc., 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).  However, the opponent must bring forth evidence upon which a reasonable fact finder could rely.  *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  "Once the

4

movant has established the absence of any genuine issue of material fact, the opposing party has an obligation to present some type of evidence to the court demonstrating the existence of an issue of fact." *Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 246-47 (4th Cir. 2005) (citing *Pine Ridge Coal Co. v. Local 8377, UMW,* 187 F.3d 415, 422 (4th Cir. 1999)).  Rule 56(e) also requires that "affidavits submitted by the party defending against a summary-judgment motion contain specific facts, admissible in evidence, from an affiant competent to testify, 'showing that there is a genuine issue for trial.'" *Id.* (quoting 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2740, 399 (3d ed. 1998)).  The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. *Anderson*, 477 U.S. at 252.

This Court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md.  2001) (citations omitted).  Indeed, this Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

<u>DISCUSSION</u>

Plaintiff claims that Defendant violated Title VII by discriminating against her on the basis of her race.  Specifically, Plaintiff alleges that she was subjected to disparate treatment in

terms of salary, discipline, and promotion.[3] (*See* Compl. Att. 1.) Each of these claims will be discussed separately.

Plaintiff has not produced any direct evidence of employment discrimination. Thus, in order to establish a claim for employment discrimination based on race, she must satisfy the three-step burden-shifting test first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, a plaintiff must present enough evidence to prove a prima facie case of discrimination. *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 142-43 (2000). Second, once the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence that the adverse employment action was taken against the plaintiff "for a legitimate, nondiscriminatory reason." *Id.* at 142 (citing *Tex. Dep't Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). Third, the plaintiff is "afforded the 'opportunity to prove by a preponderance of evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Id.* (quoting *Burdine*, 450 U.S. at 253).

### I.     Disparate Compensation

#### A.     Prima Facie Case

---

[3] The parties briefed the issue of whether Plaintiff was subjected to discriminatory constructive discharge. However, Plaintiff did not raise the issue of discriminatory discharge in her Complaint. Even if she had, there is no genuine issue of material fact. Assuming Plaintiff could satisfy a prima facie case, Defendant has satisfied its burden of articulating a legitimate, nondiscriminatory reason for constructively firing Plaintiff: she had administered medication to an infant without a doctor's order, which is a serious breach of her job responsibilities and outside the scope of her license. In response, Plaintiff did not satisfy her burden of proving by a preponderance of the evidence that Defendant's reason was a pretext for discrimination. Thus, even if Plaintiff had claimed discriminatory constructive discharge in her Complaint, Defendant would be entitled to judgment as a matter of law.

To establish a prima facie case of discrimination with respect to salary and compensation, a plaintiff must establish that (1) she is a member of a protected class, (2) she receives a lower salary than at least one employee outside the class, and (3) the higher-paid employee performs a substantially similar job. *See Kess v. Mun. Employees Credit Union of Baltimore, Inc.*, 319 F. Supp. 2d 637, 644 (D. Md. 2004); *Chika v. Planning Res. Corp.*, 179 F. Supp. 2d 575, 583-84 (D. Md. 2002).

In this case, Plaintiff alleges that Defendant discriminated against her on the basis of her race by giving her a lower salary than a white employee, Ronald Vreman, who was hired shortly after her for another RCP I position; Plaintiff was hired at an hourly rate of $17.13, while Mr. Vreman was hired at a rate of $18.25.  Plaintiff is clearly a member of a protected class because she is African-American.  She has also met the second and third prongs, because she makes more than a dollar less than an employee outside the protected class who holds the exact same position as her, RCP I.  Thus, Plaintiff has established a prima facie case of disparate compensation.

### B.     Legitimate, Nondiscriminatory Reason

Defendant contends that the discrepancy in pay between Plaintiff and Mr. Vreman was due to their different qualifications.  In hiring its employees and assessing their pay, JHH looks at the candidates' education, credentials, work experience, interview, and employment history. (Def.'s Mem. Supp. Summ. J. 13.)  As to the final category, Mr. Vreman had nine years of steady (i.e., full time) employment, while Defendant found that Plaintiff had mostly temporary or per diem employment.  (*Id*. at 13-14.)  Under JHH's hiring criteria, Mr. Vreman received one more point than Plaintiff in the employment history category because steady employment is given greater weight than temporary or per diem employment.  (*See id*.; Bilenki Aff. ¶¶ 8-10.)

Because he had more points overall, Mr. Vreman was awarded a higher hourly pay rate.

As a point of comparison, Defendant notes that three months after Plaintiff was hired, a white candidate for an RCP I position, Bradley Taylor, was hired at a pay rate of $16.80, which is lower than Plaintiff's salary. (Def.'s Mem. Supp. Summ. J. 14.) Defendant states that Mr. Taylor's salary was lower than Plaintiff's because he received fewer points under the hiring criteria, just as she received a lower salary than Mr. Vreman based on fewer points. (*Id.*)

This Court finds that Defendant has met its burden of articulating a legitimate, nondiscriminatory reason for the discrepancy in salary between Plaintiff and a white co-worker.

**C.     Evidence of Pretext**

Plaintiff argues that Defendant's reason is merely a pretext for discrimination. Although conceding that she had previously worked predominantly on a per diem basis, she argues that by working several jobs simultaneously, she had steady employment. (Pl.'s Mem. Opp'n Summ. J. 10.) Thus, Plaintiff contends that she and Mr. Vreman had comparable employment backgrounds. However, this Court has previously held that "[a Plaintiff's] own opinions about her qualifications and her employer's subjective motivations are not sufficient to establish pretext." *Kess*, 319 F. Supp. 2d at 646 (citing *McCain v. Waste Mgmt., Inc.*, 115 F. Supp. 2d 568, 574 (D. Md. 2000)). Even if Defendant did incorrectly interpret Mr. Vreman's employment history as "steadier" than Plaintiff's, "[i]t is not the province of the courts 'to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason.'" *Id.* (quoting *Dugan v. Albemarle County School Bd.*, 293 F. 3d 716, 722 (4th Cir. 2002) (internal quotations omitted)). Plaintiff has not produced any evidence that Defendant's interpretation of Mr. Vreman's and her credentials was a pretext for intentional discrimination. Thus, Plaintiff

8

has failed to meet her burden of proving, by a preponderance of the evidence, that Defendant's legitimate reason for the discrepancy in pay was a pretext for racial discrimination.

In conclusion, there is no genuine issue of material fact as to whether Plaintiff was subjected to disparate compensation, and Defendant is entitled to judgment as a matter of law.

## II.     Disparate Discipline

To establish a prima facie case of disparate discipline, a plaintiff must show that (1) she is a member of a protected class, (2) she "engaged in prohibited conduct similar to that of a person of another race," and (3) the "disciplinary measures enforced against the plaintiff were more severe than those enforced against the other person." *Shields v. Fed. Express Corp.*, 120 Fed. Appx. 956, 964 (4th Cir. 2005) (citing *Moore v. City of Charlotte*, 754 F.2d 1100, 1105-06 (4th Cir. 1985)).  In this case, Plaintiff alleges that she was "[c]onstantly being singled-out to be disciplined and/or spoken to for practices that occurred by all of us in the department." (Compl. Att. 1.)  As before, Plaintiff has clearly met the first element.

As to the second element, Plaintiff claims that both she and white RCPs engaged in the same prohibited conduct by failing to document patient care in the patients' charts. (Pl.'s Mem. Opp'n Summ. J. 12.)  However, Mr. Bilenki points out that "[w]hile other RCPs may have been remiss with some of their documentation, Ms. Sloan was *consistently and continually non-compliant* with her patient care documentation." (Bilenki Aff. ¶ 13 (emphasis added).)  Defendant argues, therefore, "while the patient care documentation of other RCPs needed to be addressed by management, no other RCP's deficiency in this area reached the severity of the

Plaintiff's inadequate patient care documentation." (Def.'s Mem. Supp. Summ. J. 16-18.)

Plaintiff attached to her Memorandum in Opposition to Defendant's Motion for Summary Judgment a letter she had written to Mr. Scott, the Director of Employee Relations, during the internal grievance process she initiated in February of 2002 after receiving a one-day suspension. (*See* Pl.'s Mem. Opp'n Summ. J. Att. 1.) In the letter, Plaintiff stated that she had copied other RCPs' patient charts as proof that several of them had failed to document patient care but were not disciplined. (*Id.*) However, Defendant contends that this letter cannot support her opposition to its summary judgment motion, because it has not been authenticated and constitutes inadmissible hearsay.[4] (Def.'s Reply 2, 6.) "It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment." *Solis v. Prince George's County*, 153 F. Supp. 2d 793, 798 (D. Md. 2001) (citing *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993)); *see also Miller v. Bristol-Myers Squibb*, 121 F. Supp. 2d 831, 837 (D. Md. 2000) (finding that a letter attached to the plaintiff's memorandum in opposition to summary judgment was not sufficient evidence to create a genuine issue of material fact because the letter "ha[d] not been authenticated by the author in an accompanying affidavit"). Also, hearsay evidence is "as inadmissible in support of a summary judgment motion as it would be at trial." *Stanley Martin Cos. v. Universal Forest Prods. Shoffner LLC*, 396 F. Supp. 2d 606, 613, (D. Md. 2005) (citing *Md. Highways Contractors Ass'n v. Md.*, 933 F.2d 1246, 1251-52 (4th Cir.

---

[4] Under Federal Rule of Evidence ("FRE") 801, hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

1991)). Because Plaintiff's letter has not been properly authenticated and refers to copies of patient files that are not part of the record before this Court, Defendant is correct that Plaintiff cannot rely on it to

support her contentions. Thus, Plaintiff has not produced any admissible evidence that white RCPs repeatedly disobeyed the documentation requirement. Because Plaintiff cannot show that she and at least one white co-worker engaged in similar prohibited conduct, Plaintiff has failed to meet the second element.

As to the third element, according to Plaintiff, Eileen Smith, who monitors the Neonatal Intensive Care Unit RCPs, regularly gave verbal warnings to other RCPs when they failed to document something on a patient's chart. (Pl.'s Mem. Opp'n Summ. J. 12.) However, Plaintiff claims that when *she* failed to document something on a patient's chart, Ms. Smith reported her deficiencies directly to management, which led to disciplinary action. (*Id*.) Because Plaintiff has failed to meet the second element, there is no basis of comparison to claim that she was disciplined more harshly. However, even if Plaintiff had met the second element, she again relies on her own letter to Mr. Scott, which contains inadmissible hearsay. (*See* Pl.'s Mem. Opp'n Summ. J. Att. 1.) Thus, Plaintiff has not produced evidence that she was disciplined more harshly than a white co-worker and therefore has not satisfied the third element.

As a result, Plaintiff has failed to satisfy the prima facie case for disparate discipline. Even if she had met her burden in that regard, she has introduced no evidence that Defendant's proffered reason for any discrepancies in discipline—the fact that Plaintiff's misconduct was repeated—was a pretext for any intentional racial discrimination. Accordingly, this Court finds

that there is no genuine issue of material fact which could lead a reasonable jury to find for Plaintiff on her claim for disparate discipline.

### III.     Failure to Promote

#### A.     Prima Facie Case

In order to establish a prima facie case for discriminatory failure to promote, a plaintiff must show that "(1) she is a member of a protected group, (2) there was a specific position for which she applied, (3) she was qualified for that position, and (4) [the defendant] rejected her application under circumstances that give rise to an inference of discrimination." *Williams v. Giant Food, Inc.,* 370 F.3d 423, 430 (4th Cir. 2004).

Here, Plaintiff has clearly met the first two elements: she is a member of a protected class, and she applied for advancement to the RCP II level on April 18, 2001. (*See* Pl.'s Mem. Opp'n Summ. J. Att. 1.)  As to the third element, the letter denying Plaintiff a promotion specifically cited as its reason the fact that she had an active disciplinary action on her record. (*See* Snow Aff. Ex. 2.)  It is unclear whether this disciplinary action rendered Plaintiff *unqualified* for the promotion or whether it merely precluded her from being considered at that time.  Defendant has introduced evidence of Plaintiff's failure to document patient care, but there is no indication that she was unqualified for the elevated position.  Even assuming Plaintiff was qualified for the RCP II position in satisfaction of the third element, though, Plaintiff has failed to meet the fourth element.  Aside from general allegations of being singled out to receive a disproportionate amount of discipline there is no evidence that JHH rejected Plaintiff's

12

application under circumstances giving rise to an inference of discrimination. Thus, Plaintiff has failed to show that she was turned down for the RCP II position under circumstances giving rise to an inference of racial discrimination.

### B. Legitimate, Nondiscriminatory Reason

Even if Plaintiff could establish a prima facie case of discriminatory failure to promote, Defendant has satisfied its burden of presenting a legitimate, nondiscriminatory reason for its decision. Namely, as stated in the rejection letter to Plaintiff, she was not approved for the higher position because of the active disciplinary action on her record that was beyond the basic counseling level. (*See* Snow Aff. Ex. 2.) In response, Plaintiff offers nothing more than allegations of being singled out for discipline as proof that the disciplinary record was merely a pretext for racial discrimination. However, as Defendant notes, Plaintiff herself acknowledged that Ms. Smith, who allegedly scrutinized her performance, never made any derogatory comments about Plaintiff's race. (*See* Sloan Dep. 183:9-11, Aug. 16, 2005.) Thus, Plaintiff has not satisfied her burden of showing by a preponderance of the evidence that Defendant's legitimate, nondiscriminatory reason for failing to promote her—the disciplinary action on her record—was a pretext for racial discrimination.

In conclusion, even viewing the facts in a light most favorable to Plaintiff, there is no genuine issue of material fact as to whether Defendant failed to promote her because of her race, and Defendant is entitled to judgment as a matter of law.

### IV. Hostile Work Environment

13

Plaintiff alleges in her Complaint that "[m]anagement refused to halt [her] being singled-out and harassed by another member of the staff." (Compl. Att. 1.) The parties have appropriately construed this as a claim under Title VII for a hostile work environment.

### A.     Prima Facie Case

In order to establish a prima facie case of a hostile work environment, Plaintiff must show that (1) she experienced unwelcome harassment, (2) the harassment was based on her race, (3) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive atmosphere, and (4) there is some basis for imposing liability on Defendant. *Baqir v. Principi*, 434 F.3d 733, 745-46 (4th Cir. 2006) (citations omitted); *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183-84 (4th Cir. 2001).

With respect to the first element, Plaintiff argues that she was subjected to unwelcome harassment in the form of "extraordinary scrutiny" by Ms. Smith as to her job performance, "anti-gay comments" and "ridicule regarding her sexuality," and "sustained abuse." (Pl.'s Mem. Opp'n Summ. J. 11-12.) Plaintiff has noted that she is gay. (Compl. Att. 1.) However, it is axiomatic that Title VII does not prohibit discrimination based on sexual orientation. *Wrightson v. Pizza Hut of America, Inc.*, 99 F.3d 138, 143 (4th Cir. 1996). Thus, Plaintiff's claim of a hostile work environment must be based on her race. "Sustained abuse" is a vague allegation and Plaintiff has not introduced any supporting evidence clarifying what she meant. However, particular scrutiny by Ms. Smith and comments could be considered unwelcome forms of harassment in satisfaction of the first element.

As to the second element, Plaintiff has not demonstrated that any harassment she

experienced was based on her race. She concedes in her deposition that she never heard any "ethnic" jokes or comments; they were mainly directed at her sexual orientation. (Sloan Dep. 172:3-5, Aug. 16, 2005.) Plaintiff also admits, as noted above, that Ms. Smith never made any

derogatory comments about Plaintiff's race. (Sloan Dep. 183:9-11, Aug. 16, 2005.) Thus, there is simply no evidence that any extra scrutiny Ms. Smith gave to Plaintiff's work or any comments uttered by other co-workers were based on Plaintiff's race. Because Plaintiff has not introduced any evidence that the harassment she allegedly suffered at work was directed towards her because of her race, she has not satisfied the second element.

Even if Plaintiff could meet the second element, she has not presented evidence that any harassment she experienced was so pervasive that it interfered with her work or created an objectionably abusive environment. "The degree of hostility or abuse to which [Plaintiff] was exposed can only be determined by examining the totality of the circumstances." *Spriggs*, 242 F.3d at 184 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Defendant notes that in her deposition, Plaintiff was unable to articulate specific instances giving rise to a hostile environment. (Def.'s Mem. Supp. Summ. J. 19-20.) In particular, when asked "what specific harassing conduct occurred," Plaintiff responded "[p]eople making copies of my stuff, just the tension in the room. It's not something that you can physically say this is what happened, but it was still there. The atmosphere was still there. The hostility was still there." (Sloan Dep. 164:9-19, Aug. 16, 2005.) This Court has previously held that "allegations [that] are not substantiated by accounts of specific dates, times or circumstances . . . do not suffice to establish an actionable claim of race discrimination." *Fisher v. Md. Dep't of Hous. & Cmty. Dev.*, 32 F.

15

Supp. 2d 257, 262 (D. Md. 1998) (citing *Carter v. Ball*, 33 F.3d 450, 461-62 (4th Cir. 1994)), *aff'd,* 166 F.3d 1208 (4th Cir. 1998). Without specific information about the frequency or severity of the comments or scrutiny of her work, this Court finds that under a totality of the circumstance,

Plaintiff has not demonstrated that she was subject to harassment severe or pervasive enough to alter the conditions of her employment or create a hostile atmosphere.  Thus, Plaintiff has failed to satisfy the third element.

Because Plaintiff's allegations clearly fall short of a prima facie case of a hostile work environment based on her race, there is no need to shift the burden to Defendant to present a legitimate, nondiscriminatory basis for allowing a hostile work environment to persist.  This Court finds that no reasonable jury could find that Plaintiff was subjected to a racially hostile work environment, and Defendant is entitled to judgment as a matter of law.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is hereby GRANTED and judgment is entered in favor of Defendant The Johns Hopkins Hospital and against Plaintiff.  A separate Order follows.


September 19, 2006                                  /s/
                                                    Richard D. Bennett
                                                    United States District Judge